# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | | |
|---|---|---|
| LAKEITA GRIMES, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 613-75 |
| | * | |
| DR. SAMUEL TODD, | * | |
| | * | |
| Defendant. | * | |

# O R D E R

Presently pending before the Court is Defendant's motion for summary judgment. (Doc. 44.) For the reasons set forth below, this motion is **GRANTED**.

## I. BACKGROUND

Plaintiff filed several claims against a number of Defendants, the core of which are that Plaintiff was discriminated against on the basis of her race and gender when she was an undergraduate student at Georgia Southern University ("GSU"), as evidenced by her treatment in class and by the decision to deny her provisional admission to the Sport Management Graduate Program ("the Program"). (Am. Compl., Doc. 17-2.) Plaintiff also alleges she was retaliated against for filing a complaint about said discrimination with the United States Department of Education, Office of Civil Rights ("OCR"). (Id. ¶¶ 63-73.)

On March 27, 2014, in response to the Motion to Dismiss filed by Defendants (Doc. 13.), the Court dismissed Counts I, III, IV, V, and VI of Plaintiff's Amended Complaint without prejudice. (Doc. 27.) Furthermore, the Court dismissed any claim within Count II that Defendants violated Plaintiff's 42 U.S.C. § 1981 rights by denying her

admission to the Program with prejudice. (Id.) On April 14, 2014, Defendants filed a supplemental Motion to Dismiss. (Doc. 28.) As a result, the Court dismissed Plaintiff's 42 U.S.C § 1981 claim for racial harassment for failure to state a claim. (Doc. 35 at 6.) The Court specified that "the *only* claim left in this case" is the claim that Defendant Dr. Samuel Todd, in his individual capacity, retaliated against Plaintiff through his representations to the OCR. (Id. at 9.) Plaintiff alleges that Defendant Todd's negative report to the OCR was, at least partially, in retaliation for her raising claims about racial harassment while studying at GSU. (Doc. 17-2, ¶¶ 65, 69(b), (c), & (e).) Specifically, Plaintiff alleges that Defendant Todd misrepresented to the OCR the provisional admission standards for the Program and Plaintiff's qualifications. (Id. ¶¶ 64 & 66.) Additionally, Plaintiff alleges that Defendant Todd misrepresented to the OCR that she was "unruly." (Id. ¶¶ 65 & 69(c).) Because only one claim remains from Plaintiff's complaint, the Court limits its recitation of facts to those relevant to that retaliation claim.

Plaintiff graduated from GSU with a Bachelor's degree in sport management in May 2009. (PSMF, Doc. 56, ¶ 43; DSMF, Doc. 44-2, ¶ 43; Grimes Dep., Doc. 44, Ex. 1 at 16.) Plaintiff's cumulative grade point average was 2.53 on a 4.0 scale. (Unofficial Transcript, Doc. 44-18.) On February 27, 2009, Plaintiff submitted an application for admission to a graduate program[1] at GSU. (Grimes Dep. at 14; Doc. 44, Ex. 6.)

---

[1] The record is unclear as to which GSU graduate program Plaintiff originally applied. On her application, Plaintiff listed Master of Business Administration as her preferred major. (Graduate Application, Doc. 44, Ex. 6 at 3.) Plaintiff claims it was her intention to take business classes during the summer in order to accumulate credits that could apply towards her sport management master's degree. (Grimes Dep. at 14-15.)

2

There are two ways by which an applicant can gain admission to the Sport Management Graduate Program: regular admission and provisional admission. In 2009, the written criteria for regular admission to the Program required a Bachelor's degree, at least 2.75 cumulative grade point average, a 44 on the Miller Analogies test ("MAT") if the applicant chose to take the MAT, two letters of recommendation, and a personal interview with members of the faculty. (GSU Catalogue, Doc. 44, Ex. 4.) Plaintiff admits she was not qualified for consideration for regular admission into the Program. (Grimes Dep. at 34.) In 2009, the written criteria for provisional admission into the Program required an undergraduate grade point average of 2.5 and "a 36 MAT." (GSU Catalogue.)

Defendant Todd was the Program Director of the Program in 2009. (Todd Decl., Doc. 44, Ex. 2 ¶ 16.) As such, he reviewed and made recommendations on all completed applications for admission to the Program. (Id.) Meeting the minimum criteria for admission to the Program did not necessarily guarantee admission. (Id. ¶ 17; DSMF ¶ 38; PSMF ¶ 38.)

Plaintiff received a score of 386 on the April 2009 MAT. (MAT Examinee Report, Doc. 44, Ex. 7.) This score was in the 32nd percentile rank for the total group of test takers and the 29th percentile for her intended major.[2] (Id.) In the past, the MAT was scored based on a two-digit raw score. (MAT Technical Manual, Doc. 44, Ex. 5 at 7-8.) Sometime before 2009, the scoring system changed to a three-digit scaled score. (Id.) After receiving her MAT score,

---

[2] On Plaintiff's MAT Examinee Report, next to Intended Major it says "FIELD NOT LISTED." (MAT Examinee Report, Doc. 44, Ex. 7.) Plaintiff insists she did not disclose her intended major as undecided. (PSMF ¶ 63.) Plaintiff asserts that because sport management was not available as an intended major option on the MAT test, she just picked a major because that is what the test administrator instructed her to do. (Doc. 44, Ex. 22 at 2.)

3

Plaintiff called Dr. Timothy Mack, the Dean of the Jack N. Averitt College of Graduate Studies, and explained that the criteria for consideration for provisional admission into the Program required a MAT score of 36, but the MAT scoring scale had been converted. (Grimes Dep. at 23-24 & 35-36.) Dr. Mack called Plaintiff later and informed her that a raw score of 36 was the equivalent of a scaled score of 380. (Id. at 35-36) Plaintiff also contacted Defendant Todd about her MAT score and the conversion. (Id. at 36.) Defendant Todd informed Plaintiff that he did not know what she needed to score on the MAT for provisional admission and that he was unfamiliar with the MAT scoring scale. (Id. at 37.)

The MAT Technical Manuel[3] sets forth conversion tables that provide a range of scaled scores equivalent to raw scores for the "Total Group" and for each of the seven intended fields of study, including "Undecided". (MAT Technical Manual.) Under the conversion tables for the "Total Group" and "Undecided," a raw score of 36 is equivalent to a scaled score range of 389-395. (Id. at 9.) A scaled score of 386 is equivalent to a raw score of 33 or 34. (Id.) For all seven intended fields of study, a raw score of 36 is the equivalent of at least a 389. (Id. at 9-16.)

On April 22, 2009, Plaintiff submitted an Applicant Questionnaire for consideration for provisional admission to the Program. (Doc. 44, Ex. 8.) On the questionnaire, Plaintiff stated that she had volunteered at two sporting events: a GSU football game and a NFL Punt, Pass, and Kick competition. (Id.) Plaintiff did not identify any work experience with a sport organization. (Id.) Plaintiff noted that she met with a faculty member at Statesboro High School about his

---

[3] Plaintiff admits that she has never seen a MAT manual with the conversion tables. (Grimes Dep. at 41.)

sport related job because she was interested in that type of work. (Id.) Plaintiff claims that in the fall of 2008 she was in the process of starting her own sport management company, Division I Boys, by managing at least 15 at-risk student athletes. (Grimes Dep. at 21.) Plaintiff mentored these students to help them stay out of trouble and focus on school and sports. (Id. at 66.) Plaintiff, however, did not provide information about this experience to GSU in support of her application for admission to the Program. (Id. at 21.)

On June 22, 2009, Plaintiff received a letter informing her that she was not accepted into the Program. (Grimes Dep. at 20; Doc. 44, Ex. 12.) On July 28, 2009, Plaintiff appealed the denial of her application. (Doc. 44, Ex. 13.) In her appeal letter, Plaintiff disclosed that "[i]n the afternoon, [she] would mentor and tutor young students who were interested in football and basketball." (Id.) This is the only time Plaintiff referenced her startup company and experience working with at-risk student athletes. (Grimes Dep. at 24-25.) On August 14, 2009, Plaintiff's appeal was denied by GSU. (Doc. 44, Ex. 15.)

On August 25, 2009, Plaintiff filed a complaint with the OCR against GSU alleging that she was denied admission to the Program for the fall 2009 semester because she was African-American and a female. (OCR Report, Doc. 44, Ex. 16 at 1.) The OCR's investigation included a review of documents pertinent to the complaint and interviews with Plaintiff and GSU staff. (Id.) During the investigation, Plaintiff provided a written statement to the OCR investigator wherein she recounted her qualifications. (Doc. 44, Ex. 17.) Plaintiff again noted that she worked at a GSU football game and a NFL Punt, Pass, and Kick competition in the fall of 2008. (Id.) There is no mention,

5

however, of Plaintiff's startup company in her letter to the OCR. (Doc. 44, Ex. 17.)

On February 13, 2010, the OCR found there was insufficient evidence to support a finding of noncompliance with Title VI and Title IX. (OCR Report at 1.) The OCR set forth the factual findings for its determination. (Id. at 2-4.) Specifically, the OCR found the admission requirements for provisional admission were a 2.5 GPA and a score in the 36th percentile on the MAT, and Plaintiff's MAT score of 386 fell below the provisional admission cut off. (Id. at 3, 5.) Additionally, "[t]he Program director told OCR that Complainant was not considered for admission to the Program because her MAT test score of 386 (32nd percentile) fell below the minimum requirement for regular and provisional admission, and she did not have any significant work experience in the sport industry." (Id. at 4.)

The report noted "that the Program's admission requirements do not state explicitly that sport industry experience is required for admission; however, the applicant questionnaire includes multiple questions concerning applicant's volunteer and work experience in the sport industry." (Id.) Additionally, the Program Director and a GSU faculty member stated that applicants with work experience in the industry are looked upon more favorably for admission over those without experience because those with experience tend to be more successful in the Program. (Id. at 3.)

Looking into possible comparators, the OCR found that in the fall of 2009 three students were admitted provisionally. (Id. at 4.) These three students had test scores and/or GPAs that fell below the regular admission requirements but met the requirements for provisional admission. (Id.) The Program Director explained that

6

those students were admitted due to significant work experience in the sport industry. (Id.) The OCR reviewed the students' applications and found they had more experience in the sport industry than Plaintiff. (Id.) The OCR additionally found that another student, an Asian female, had a MAT score of 365 and a GPA of 2.52, and that, like Plaintiff, she was denied admission. (Id.)

On March 3, 2010 Plaintiff appealed the OCR's determination. (Doc. 44, Ex. 18.) In her appeal, Plaintiff claimed that provisional admission requires a raw score of 36 on the MAT, not a score in the 36th percentile.[4] (Id.) In response to the appeal, the OCR contacted representatives of Pearson, the company that administers the MAT test. (Doc. 44, Exs. 20 & 21.) A Pearson customer service representative informed the OCR investigator that the corresponding percentile ranking for a score of 386 was 30 percent. (Doc. 44, Ex. 20.) Additionally, another Pearson representative informed the investigator that a scaled score of 402 is equivalent to a raw score of 44 and a scaled score of 389 is equivalent to a raw score of 36. (Doc. 44, Ex. 21.)

Plaintiff contends that the Pearson employees "erroneously" informed the OCR about the MAT scoring. (PSMF ¶¶ 146 & 148.) Plaintiff claims that GSU is responsible for interpreting the MAT scores and that the MAT Technical Manual merely provides schools with suggestions regarding score interpretations. (Id. ¶ 148.)

---

[4] Plaintiff also stated that (1) her percentile rank for her intended major would have been a 44 instead of a 29 if sport management could have been selected as an intended major; (2) she failed to see why students with experience in the industry are looked upon more favorably and how industry experience can predict success in the Program; (3) she was "offended" at being compared to the Asian female who was not admitted with a MAT score of 365 and a grade point average of 2.52; and (4) her grade point average was a 2.59 when she graduated from GSU. (Doc. 44, Ex. 18.) Additionally, the Court notes that most of Plaintiff's purported work experience was done in connection to class assignments. (Id.)

7

Plaintiff's own exhibits show, however, that Pearson determines "how the MAT is structured, administered, and *scored*." (Doc. 56, Ex. 1 at 14) (emphasis added). It is then "the responsibility of each school to determine how it uses MAT scores." (Id. at 15.) Plaintiff provides no evidence to support her contention that individual schools create their own scoring system for the MAT. Instead, the evidence shows that Pearson scores the test and then individual schools decide what scores will be sufficient for admission to their program and how important the MAT score is when evaluating a student's overall application for admission. (Id. at 14-16.)

On December 17, 2012, the OCR denied Plaintiff's appeal. (Doc. 44, Ex. 22.) Plaintiff filed this suit on December 7, 2012. (Doc. 1.) Defendant filed the presently pending motion for summary judgment on February 19, 2015. (Doc. 44.) The Clerk gave Plaintiff appropriate notice of the motion for summary judgment and informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 45.) Thus, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired and the motion is now ripe for consideration.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986). The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." <u>U.S. v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court must also avoid weighing conflicting evidence. <u>Anderson</u>, 477 U.S. at 255; <u>McKenzie v. Davenport-Harris Funeral Home</u>, 834 F.2d 930, 934 (11th Cir. 1987). Nevertheless, the non-moving party's response to the motion for summary judgment must consist of more than conclusory allegations, and a mere "scintilla" of evidence will not suffice. <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990); <u>Pepper v. Coates</u>, 887 F.2d 1493, 1498 (11th Cir. 1989).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970) and <u>Celotex</u>, 477 U.S. 317). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. <u>Jones v. City of</u>

9

Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

### III. DISCUSSION

Defendant Todd moves for summary judgment on Plaintiff's claim that he retaliated against her for activity protected under § 1981.

10

"Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts." Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999). "To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that [s]he engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." Saunders v. Emory Healthcare, Inc., 360 F. App'x 110, 115 (11th Cir. 2010) (quoting Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008)) (per curiam) (alteration in original). "After the plaintiff has established the elements of a claim, the [defendant] has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged [] action as an affirmative defense to liability." Id. "The plaintiff bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the [defendant] is a pretext for prohibited retaliatory conduct." Id.

### A. Prima Facie Case

Defendant Todd does not contest that Plaintiff engaged in a statutorily protected activity and the Court agrees. Indeed, filing an OCR complaint can be considered protected conduct. (Doc. 35 at 7); See Tucker v. Talladega City Sch., 171 F. App'x 289, 296 (11th Cir. 2006) ("Tucker engaged in statutorily protected expression when he filed the Office of Civil Rights (OCR) and EEOC complaints"); see also Suber v. Bulloch Cnt. Bd. Of Educ., 722 F. Supp. 736, 747 (S.D. Ga. 1989). Rather, Defendant Todd contends that Plaintiff cannot demonstrate the second or third elements of her prima facie case.

11

Plaintiff avers that she suffered a materially adverse action when Defendant Todd's misrepresentations regarding the provisional admission requirements for GSU's Sport Management Graduate Program and Plaintiff's qualifications altered the findings of the OCR.[5] (Doc. 56 at 28.) Defendant Todd argues that Plaintiff has failed to provide any evidence that he provided false information to OCR or that the alleged actions were materially adverse. After careful consideration, the Court finds that Plaintiff has failed to establish her prima facie case of retaliation.

"To succeed on a retaliation claim, plaintiffs must show that defendants' actions were materially adverse, meaning that the challenged actions would 'dissuade [ ] a reasonable [person] from making or supporting a charge of discrimination.'" Bowers v. Bd. of Regents of Univ. Sys. of Ga., 509 F. App'x 906, 911-12 (11th Cir. 2013), cert. denied, 133 S. Ct. 2881 (2013), reh'g denied, 134 S. Ct. 42 (2013) (quoting Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006)). The Court addressed this issue when ruling on Defendants' motion to dismiss. (Doc. 35 at 7-8.) Relying on Wideman v. Wal-Mart Stores Inc., 141 F.3d 1453 (11th Cir. 1998), the Court held that "misrepresentations about a student's work record and personality could resemble misrepresentations about employee's attendance and work relationships" and therefore could qualify as adverse acts. (Doc. 35 at 7-8.)

However, Plaintiff has failed to show there is a genuine issue as to whether Defendant Todd made any misrepresentations to the OCR or

---

[5] In her Amended Complaint, Plaintiff also claims Defendant Todd represented her as "unruly" to the OCR (Am. Compl., ¶ 64); however, neither party addresses this allegation in their briefs. Therefore, the Court will not include this stray allegation in its discussion. Moreover, consideration of this issue would not change the Court's decision because the Court finds that Plaintiff has not proven a prima facie case or demonstrated pretext.

12

that these alleged misrepresentations altered the findings of the OCR. In her response to his motion for summary judgment, Plaintiff claims that Defendant Todd altered the findings of OCR when he "lied to OCR investigators when he stated Plaintiff's MAT score 'fell below the minimum requirement.'" (Doc. 56. at 28.) Plaintiff provides no evidence to support this claim and Plaintiff's conclusory statements cannot defeat summary judgment. See Peppers v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989). Moreover, the evidence shows that Plaintiff's MAT test results did fall below the minimum required for consideration for provisional admission to the Program.

The GSU Catalogue states that the provisional admission to the Program "may be granted with a 2.5 undergraduate grade point average and . . . a 36 MAT." (GSU Catalogue.) Plaintiff alleges Defendant Todd misrepresented to the OCR that the "36 MAT" in the catalogue referred to a percentile rather than raw score. (Doc. 56 at 28; Grimes Dep. at 35.) Plaintiff claims Dr. Mack informed her that the "36 MAT" in the GSU Catalogue referred to a raw score and not percentile. (Grimes Dep. at 35.) Assuming Dr. Mack's alleged statement is correct, Plaintiff's score still fell short. A 36 as a raw score is equivalent to a scaled score range of 389 to 395 for the "Total Group" and all possible majors. (MAT Catalogue at 9-16.) Plaintiff received a scale score of 386. (Doc. 44, Ex. 7.) Assuming "36 MAT" refers to a percentile, Plaintiff's scores were either in the 32nd or 29th percentile, depending on the major. (Id.) Therefore, Plaintiff did not meet the minimum MAT score required for provisional admission as a percentile either. Thus, even if Defendant Todd did misrepresent the MAT requirements for provisional admission to the

OCR, the objective evidence before the OCR and the Court still supports the same conclusion.[6]

Plaintiff also claims that Defendant Todd made misrepresentations to the OCR regarding her work history in the industry. (Doc. 56 at 26.) The information provided to the OCR regarding Plaintiff's experience in the sport industry was provided to the OCR directly by Plaintiff. (Doc. 44, Exs. 16 & 17.) Plaintiff told the OCR that she had volunteered at two sport industry related events: a GSU football game and a NFL Punt, Pass, and Kick competition. (Doc. 44, Ex. 17.) The OCR found that "the Program's admission requirements do not state explicitly that sport industry experience is required for admission; however, the applicant questionnaire includes multiple questions concerning applicant's volunteer and work experience in the sport industry." (OCR Report at 4.) While the OCR letter notes that the Program Director said Plaintiff did not have any significant work experience (id.), Plaintiff has not provided any evidence to prove this statement is false. Plaintiff contends that in addition to volunteering at two sport industry events, she was trying to start a sport management company, Division I Boys, working with at-risk student athletes. (Grimes Dep. at 21 & 40.) However, Plaintiff has not argued or presented evidence that the OCR was aware of this additional experience. In fact, the only time Plaintiff mentioned this experience throughout her entire GSU admission process and the

---

[6] As the Court understands Plaintiff's argument in this respect, "GSU admission standards" indicated that a "MAT raw score of 36 was equivalent to a MAT scaled score of 380 . . . ." (Doc. 56 at 28.) As Plaintiff appears to interpret it, GSU is responsible for setting its own scale, outside of Pearson and therefore any Pearson scales or representations are irrelevant to GSU admissions. (See PSMF ¶¶ 146 & 148.) Therefore, because Dr. Mack apparently told Plaintiff that a 380 was the minimum score, any charts or tables provided by Pearson were of no import. As detailed above, there is nothing in the record to support such a contention.

14

OCR investigation was in her letter appealing the denial of her application when she stated, "[i]n the afternoon, [she] would mentor and tutor young students who were interested in football and basketball." (Doc. 44, Ex. 13.) Additionally, the OCR found that Plaintiff did have less experience in the sport industry than the three students who were admitted provisionally into the Program in the fall of 2009. (OCR Report at 4-5.)

Plaintiff has failed to show that any statements Defendant Todd made to the OCR were false or misrepresented the provisional admission requirements or Plaintiff's qualifications. Additionally, Plaintiff has failed to show that any statements Defendant Todd made to the OCR altered their determination. Thus, this Court finds that Plaintiff has failed to establish her prima facie case of retaliation.

### B. Legitimate, Non-Discriminatory Reason

Even assuming that Plaintiff established a prima facie case, the Court nonetheless finds Plaintiff has failed to show pretextual reasons behind Defendant's actions. Defendant Todd has articulated legitimate, non-retaliatory reasons for his representations to the OCR. Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). "As with a Title VII discrimination claim, the employer's burden is 'exceedingly light.'" Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994) (citing Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1495 (11th Cir. 1989)).

In this case, Defendant Todd has provided legitimate non-retaliatory reasons for the provision of any incorrect information to the OCR. In regards to the MAT score requirements, there is evidence that Defendant Todd was unfamiliar with the MAT test due to its infrequent submission and was not aware of how it was scored. (Todd Decl. ¶ 18; Grimes Dep. at 36-37.) Thus, any misrepresentations made to the OCR regarding the MAT requirements for provisional admission and Plaintiff's score were made unintentionally rather than with the intent to retaliate. As to Plaintiff's work experience, Defendant Todd claims his statement that Plaintiff's work history of volunteering at two sporting events was insignificant was objectively true and reasonable. The Court therefore finds such reasons sufficient to meet Defendant's minimal burden of production at this stage.

### C. Pretext

In order "to avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Clark, 990 F.2d at 1228 (citation omitted). The law of this Circuit is clear: "A reason is not pretextual unless it is shown both that the reason was false, and that retaliation was the real reason." Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec., 410 F. App'x 243, 247 (11th Cir. 2011) (citing Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006)); Morrison v. City of Bainbridge, Ga., 432 F. App'x 877, 881 (11th Cir. 2011) (same). "A plaintiff does not demonstrate pretext by showing that the defendant had a mistaken belief about the facts that formed the basis for the alleged non-

16

retaliatory reason. Instead, the plaintiff must present evidence that the defendant did not honestly believe the facts on which it based its non-retaliatory reason." Smith v. Constr. Datafax, Inc., 871 F. Supp. 2d 1226, 1239 (N.D. Ala. 2012) (internal citations omitted). To do so, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [individual's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)) (internal quotations omitted). If the proffered reason is one that might motivate a reasonable [individual], a plaintiff cannot merely recast the reason, but must meet it "head on and rebut it." Chapman v. Al Transp., 229 F.3d 1012, 1030 (11th Cir. 2000). Conclusory allegations or unsupported assertions of retaliation, without more, "are not sufficient to raise an inference of pretext." Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (quotation omitted).

Here, Plaintiff has failed to show that Defendant Todd's reasons are pretextual. Plaintiff only makes unsupported allegations that Defendant Todd lied to the OCR, offering no argument to support a conclusion that he did in fact lie or that retaliation was the true reason for any alleged lie. Defendant Todd provided evidence that he was unfamiliar with the MAT test due to its infrequent submission and was not aware of the change in how the test was scored. (Todd Decl. ¶ 18.) And the law of this circuit is clear: a plaintiff cannot show pretext by establishing a defendant was mistaken in his belief. Archie v. Frank Cockrell Body Shop, Inc., 581 F. App'x 795, 799 (11th

17

Cir. 2014) (citing Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470-71 (11th Cir. 1991)). Plaintiff's response is that Defendant Todd was familiar with the MAT test and its change in scoring because of his position as Program Director. (Pl.'s Rsp., Doc. 56, at 29.) However, she provides no evidentiary support for this allegation.[7] In fact, Plaintiff admitted that Defendant Todd told her he was unfamiliar with the MAT as well as the scoring scale prior to her filing a complaint with the OCR. (Grimes Dep. at 36-37.)

Plaintiff has similarly not provided any evidence that work experience was not a factor that GSU considered. While true, as the OCR recognized, work history is not a stated qualification, Plaintiff has not presented any argument to rebut Defendant Todd's "holistic" approach. (Todd Decl. ¶ 17.) Indeed, of the three individuals provisionally admitted over Plaintiff, all were found to have more significant work experience. (OCR Report at 4.) Thus, Plaintiff has failed to show that any representation about her work experience was false. Even considering her experience managing at-risk student athletes, Plaintiff readily admits that she did not include that information in her application. (Grimes Dep. at 21.) Additionally, the Court can find no indication that Plaintiff ever informed the OCR about this experience or that Defendant Todd or the OCR knew of it on their own accord.

Finally, even if work experience was not a normal consideration, Plaintiff has presented no argument that retaliation was the true

---

[7] Plaintiff points to an email Defendant Todd sent regarding the MAT as evidence of his familiarity with the MAT scoring system. (Pl.'s Sur-Reply, Doc. 59 at 4.) However, this email was sent on March 18, 2010 *after* the OCR issued its determination regarding Plaintiff's allegations. (Todd Dep., Doc. 59, Ex. 1 at 35; OCR Report at 1.) Thus, it does not support Plaintiff's contention that Defendant Todd was familiar with the MAT and its scoring system when he spoke to the OCR.

reason.  Indeed, she presents only conclusory allegations that "Dr. Todd lied to cover up discrimination and retaliation" and the "reason is false and that retaliation is the real reason."  (Doc. 56 at 29.)  For the above mentioned reasons, Defendant is entitled to summary judgment.

### IV. CONCLUSION

Accordingly, Defendant's motion for summary judgment (doc. 44) is **GRANTED**.  The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendant.  The Clerk **SHALL** terminate all deadlines and motions and **CLOSE** the case.

**ORDER ENTERED** at Augusta, Georgia, this 29th day of June, 2015.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

19